UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DR. PEPPER/SEVEN UP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:09-cv-53-SEB-WGH |
| | ) | |
| ALICE J. SCHLEICHER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on Defendant's Motion to Dismiss [Docket No. 20], filed on August 10, 2009, pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 22, 2009, Plaintiff, Dr. Pepper/Seven Up, Inc. ("DP/SU"), filed suit against Defendant, Alice J. Schleicher, Inc. ("Schleicher"), for breach of contract and unjust enrichment. Schleicher has moved to dismiss DP/SU's Complaint for failure to state a claim because the action is barred by a four-year statute of limitations pursuant to the Uniform Commercial Code. DP/SU claims that the U.C.C. time limitation does not bar its action because the contract is for services, not goods, and thus, is not governed by the U.C.C. For the reasons detailed below, we <u>GRANT</u> Defendant's Motion to Dismiss.

**<u>Factual Background</u>**

Dr. Pepper/Seven Up, Inc., is a Delaware corporation with its principal place of

business in Collin County, Texas, that produces various beverages, including Dr. Pepper and 7 Up fountain products. Alice J. Schleicher, Inc., is an Indiana corporation with its principal place of business in Sellersburg, Indiana, that owns and operates Kentucky Fried Chicken ("KFC") and KFC multi-brand franchise restaurants in Alabama, Indiana, Kentucky, and Tennessee. Compl. ¶¶ 1-2.

On January 1, 2002, DP/SU and Schleicher entered into a Dr. Pepper/Seven Up Beverage Supply Agreement ("the Agreement"). Pursuant to this agreement, Schleicher was authorized to purchase DP/SU beverage products from DP/SU and/or its approved distributors and serve regular Dr. Pepper and/or 7 Up in fifty-one (51) of Schleicher's KFC franchise restaurants and in one multi-brand KFC/Taco Bell restaurant (collectively, "the Participating Restaurants") for a ten year period from January 1, 2002 through December 31, 2011 ("the Term"). Id. ¶ 7. In return for Schleicher's agreement to serve DP/SU's products in the Participating Restaurants, DP/SU paid Schleicher certain signing bonuses, including a "Dr. Pepper Signing Bonus," which was a one-time signing bonus paid at the outset of the Agreement based on the number of the Participating Restaurants serving regular Dr. Pepper product, and a "7 Up Annual Bonus," which was an annual bonus to be paid each year based upon the number of the Participating Restaurants serving 7 Up. Id. ¶ 8.

In order to receive annual cash and merchandise funding from DP/SU beyond these bonuses, the Agreement required Schleicher, in addition to serving DP/SU beverage products in the Participating Restaurants, to meet various other conditions, including,

refraining from dispensing competing beverage products in the Participating Restaurants, maintaining permanent Dr. Pepper and 7 Up logos on menus or menu boards, and participating in at least one promotional program each year. The amount of the additional funding Schleicher would receive if it met these conditions was based on the number of gallons of DP/SU product purchased. For example, in its KFC restaurants, Schleicher could receive $0.85 per gallon for equipment funding and $0.15 per gallon for service funding. Def.'s Exh. A, Beverage Supply Agreement ("B.S.A."), Section 9.[1]

From January 2002 through April 2003, the Participating Restaurants served Dr. Pepper and/or 7 Up in compliance with the Agreement and Schleicher received both the Dr. Pepper Signing Bonus and the 7 Up Annual Bonus for 2002 and 2003. However, beginning in June 2003, Schleicher stopped selling Dr. Pepper and/or 7 Up products in some, if not all, of the Participating Restaurants. Compl. ¶ 9. On June 3, 2003, DP/SU notified Schleicher in writing that it had breached the Agreement by removing Dr. Pepper products from certain Participating Restaurants. On January 29, 2004, DP/SU informed Schleicher by letter that it (Schleicher) continued to be in breach of the Agreement and that, if the breach were not cured within thirty days, the Agreement would terminate. Schleicher failed to cure the breach, and, on February 28, 2004, DP/SU terminated the Agreement. Schleicher has refused to repay the unearned portions of the Dr. Pepper

---

[1] Defendant's Exhibit A is the Beverage Supply Agreement. This Court may consider the Agreement because it is referenced in Plaintiff's Complaint, central to the breach of contract claim, and attached to this Motion to Dismiss. See Wright v. Associated Ins. Cos. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

Signing Bonus and/or the 2003 7 Up Annual Bonus it received. Id. ¶¶ 10-13.

On April 22, 2009, DP/SU filed its Complaint in this action alleging breach of contract and unjust enrichment.

## Legal Analysis

### I. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). Id. "[A]t some point, the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."[2] Id. (quoting Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) (internal quotations omitted)).

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent

---

[2] Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a). Under Seventh Circuit law, the statement must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Hillingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir. 2007) (internal citations omitted).

with the allegations in the complaint." Twombly, 550 U.S. 544, 563 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

## II.     Choice of Law Analysis

Initially, there is a dispute between the parties regarding whether Indiana law or Kentucky law governs the statute of limitations question. Section 20 of the Agreement provides: "This Agreement shall in all respects be construed in accordance with and governed by the substantive laws of Kentucky." B.S.A., Section 20. Defendant contends that, per this provision, Kentucky law is applicable. Plaintiff asserts that Indiana law applies because the statute of limitations is a procedural, rather than substantive, issue.

Because the basis of our jurisdiction here is diversity of citizenship and Indiana is the forum state for the litigation, Indiana's choice of law rules apply. See S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 50 F.3d 476, 478 (7th Cir. 1995) ("[A] federal court sitting in diversity must first apply the forum state's choice of law rules, which may or may not select the forum state's substantive law to govern the dispute." (internal citations

omitted)). Indiana law treats statute of limitations issues as procedural, rather than substantive, and therefore not subject to choice of law disputes. Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc., 2007 WL 2904591, at *10 (S.D. Ind. Sept. 28, 2007) (Young, J.) (citations omitted). Thus, where, as here, a choice of law provision unambiguously calls only for the application of another state's *substantive* law, federal courts sitting in diversity in Indiana apply Indiana's statute of limitations.[3] See id. at *10-*11.

## III. Statue of Limitations

It is undisputed that, because Schleicher stopped serving DP/SU's products in

---

[3] Although we will apply Indiana law for the reasons detailed above, we note that application of either Indiana or Kentucky law to the facts at bar would render the same result. Both Indiana and Kentucky have the same standard for determining when a cause of action for breach of contract accrues. See KY. REV. STAT. § 355.2-725 ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."); IND. CODE § 26-1-2-725 ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). Both Kentucky and Indiana U.C.C. provisions impose a four-year statute of limitations on contracts for goods and longer limitations periods (either six or ten years) for contract claims that are not governed by the U.C.C. Finally, in circumstances where it is unclear if a contract is one for goods or services, both states use the "predominant thrust" test to make the determination. See Wehr Constructors, Inc. v. Steel Fabricators, Inc., 769 S.W.2d 51, 54 (Ky. Ct. App. 1988) (applying the predominant thrust test to determine whether U.C.C. applicable); Insul-Mark Midwest, Inc. v. Modern Materials, Inc., 612 N.E.2d 550, 554 (Ind. 1993) ("We conclude that the predominant thrust test is the best and most workable approach for determining the applicability of the U.C.C.. to mixed transactions.").

It is undisputed that Plaintiff filed its Complaint in this action just under six years after the cause of action accrued. Thus, under both Indiana and Kentucky law, the disposition of this motion to dismiss will come down to whether the Agreement is determined to be a contract for goods governed by the U.C.C. (rendering it untimely) or a contract for services which does not fall within the provisions of the U.C.C. (meaning that this action was timely filed). Because the test for making such a determination is the same under both states' laws, the result will be the same regardless of which state's law is applied.

some, if not all, of the Participating Restaurants at least by June 3, 2003, DP/SU's cause of action accrued on that date. See IND. CODE § 26-1-2-725 ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). DP/SU filed the instant suit on April 22, 2009, approximately five years and eleven months after the cause of action accrued. Schleicher contends that DP/SU's claim is barred because DP/SU did not file this action within the applicable limitations period. Schleicher maintains that the Agreement is a contract involving the sale of goods, and, as such, is governed by the four-year statute of limitations in the Indiana U.C.C. IND. CODE § 26-1-2-725 ("An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued.").

DP/SU rejoins that the Agreement is entirely, or at least primarily, a contract for services, and thus, the U.C.C. four-year statute of limitations is inapplicable. DP/SU maintains that its breach of contract claim is instead governed by either a six- or ten-year limitations period, both of which are satisfied. See IND. CODE § 34-11-2-9 ("An action upon promissory notes, bills of exchange or other written contracts for the payment of money . . . must be commenced within six (6) years after the cause of action accrues."); IND. CODE § 34-11-2-11 ("An action upon contracts in writing, other than those for the payment of money, . . . must be commenced within ten (10) years after the cause of action accrues.").

We find that the U.C.C. limitation period applies in this case. The U.C.C. applies to transactions in goods, which, under Indiana law, includes mixed contracts for goods

7

and services where the predominant purpose of the contract is to provide goods. Insul-Mark Midwest, Inc. v. Modern Materials, Inc., 612 N.E.2d 550, 553-54 (Ind. 1993). "Under the predominate thrust test, courts look to the agreement between the parties to determine their understanding about the predominant purpose of the contract. In focusing on the goals of the contracting parties, the predominant thrust approach preserves parties' expectations regarding their agreement." Id. at 554. To make this determination, the Court first looks to the language of the contract, specifically "the terms describing the performance required of the parties, and the words used to describe the relationship between the parties." Id. at 555 (citations omitted). Beyond the contract language, courts also consider "the circumstances of the parties, and the primary reason they entered into the contract" as well as "the final product the purchaser bargained to receive, and whether it may be described as a good or a service." Id. Finally, examining the costs involved for the goods and services can also be helpful. "If the cost of the goods is but a small portion of the overall contract price, such fact would increase the likelihood that the services portion predominates." Id. (citations omitted).

This Court has previously recognized that sales distribution agreements generally "have the 'predominate thrust' of accomplishing the 'sale of goods,' and are therefore governed by the UCC's four-year statute of limitations." Stutz v. Minnesota Min. Mfg. Co., 947 F. Supp. 399, 402 (S.D. Ind. 1996) (Barker, J.) (citations omitted). Upon careful review of the "Beverage Supply Agreement" at issue here, we find that it too is properly characterized as a contract for sale, and thus, that it is governed by the four-year statute of

limitations in the Indiana U.C.C.

In the Recitals, the Agreement refers to the Franchisees as "customers" and states that the Franchisees desire to "purchase" DP/SU's beverage products. Section 2 of the Agreement (the "Scope" provision) specifically states: "This Agreement covers the *purchase* by any Franchisee of the *Postmix Products and Packaged Products* from DP/SU or approved Delivery Contractor for use and resale to consumers within the fifty United States of America to meet the demand of Franchisees for [the beverage products] during the Term."[4] B.S.A., Section 2 (emphasis added). Section 3 of the Agreement addresses base pricing, delivery, and guaranteed quality of DP/SU's beverage products. Section 4 of the Agreement provides that, throughout the Term, DP/SU will ensure price protection with respect to annual increases in cost per gallon of its beverage products. The remainder of the Agreement's substantive sections address various financial incentives, most of which are based on the amount of DP/SU beverage product purchased by the Participating Restaurants.

In support of its contention that the Agreement's predominant thrust is for the provision of services, DP/SU focuses on the following facts: (1) that the Agreement did not require a specific purchase of goods directly from DP/SU;[5] and (2) that the

---

[4] "Postmix Products" and "Packaged Products" are defined in the Agreement, but essentially include DP/SU's pre-mixed beverage products that are dispensed as fountain drinks. There is no dispute that these products are goods as defined under the U.C.C.

[5] The Agreement specifies that franchisees could purchase beverage products directly from DP/SU or through DP/SU's authorized bottlers and approved delivery contractors. Def.'s
(continued...)

Agreement set out a number of service responsibilities that Schleicher was required to perform in order to receive from DP/SU the bonuses and other funding incentives described in the contract. DP/SU argues that the predominant purpose of the Agreement is thus for the rendition of services, specifically Schleicher's agreement to market and sell DP/SU products. These service responsibilities are contained in subparagraph 9(e) of the Agreement and require franchisees to serve DP/SU product in their restaurants, use and prepare the beverage product in accordance with DP/SU's standards, include the soft drink logos on their menus, prohibit other "competitor" beverages from being sold, and participate in at least one DP/SU marketing event per year. The provision also requires Participating Restaurants to share certain information with DP/SU, including soft drink sales data and trends, if available, "[i]n order to increase soft drink volume." B.S.A., Section 9(e)(viii).

      Although the Agreement does include certain service requirements, without the sale of DP/SU products to Schleicher, the Agreement would be meaningless. The service aspects of the Agreement that DP/SU cites are contained in only one subparagraph of one section of the contract and are aimed at increasing demand for DP/SU's beverage products, products which were to be sold and supplied by DP/SU and its distributors. In order to fulfill many of the service responsibilities set out in the Agreement, such as

---

     [5](...continued)
Exh. A, Section 3(a) ("Throughout the Term, DP/SU, directly or through its approved Delivery Contractors, will sell [its beverage products] . . . so long as such delivery is ordered by Franchisee through DP/SU or an approved Delivery Contractor.").

serving DP/SU's products in its stores and refraining from selling competitor beverages, it would have been necessary for Schleicher to purchase DP/SU's products from DP/SU or its authorized distributors. Moreover, as discussed above, save for the Dr. Pepper Signing Bonus and 7 Up Annual Bonus, which were paid based on the number of Participating Restaurants serving DP/SU products, the Agreement specifically states that the other funding components described in the contract were to be paid to franchisees "per Gallon" of DP/SU beverage product purchased during the Term.

For the foregoing reasons, we find that DP/SU's purpose in entering the Agreement was to accomplish the sale of its goods. Therefore, that Agreement, properly characterized as a sales contract, is governed by the four-year statute of limitations set forth in the Indiana U.C.C.

**IV.   Conclusion**

For the reasons detailed in this entry, we find that the Agreement has the predominant thrust of accomplishing the sale of goods, and therefore, that Indiana's four-year statute of limitations applies. Because it is undisputed that this lawsuit was filed approximately six years after Plaintiff's cause of action accrued, it is barred by the applicable limitations period. Thus, we **GRANT** Defendant's Motion to Dismiss.[6] Final

---

[6] Because Plaintiff's unjust enrichment claim incorporated by reference allegations of the existence of a contract between the parties and the present dispute arises out of the express contract, that claim is also properly dismissed. Thorogood v. Sears, Roebuck and Co., 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006) (collecting cases).

11

judgment shall enter accordingly.

   IT IS SO ORDERED.

Date:  03/05/2010

                SARAH EVANS BARKER, JUDGE
                United States District Court
                Southern District of Indiana

Copies to:

Justin E. Endres
YOUNG LIND ENDRES & KRAFT
jendres@ylek.com

Richard A. Illmer
BROWN MCCARROLL LLP
rillmer@mailbmc.com

John Arthur Kraft
YOUNG LIND ENDRES & KRAFT
johnk@ylek.com

John Pegram
2001 Ross Avenue
Suite 2000
Dallas, TX 75201